Clay W. Stucki (6141)
Joseph G. Pia (9945)
Mark H. Richards (9018)
STUCKI STEELE PIA & ANDERSON
299 South Main Street, Suite 2200
Salt Lake City, Utah 84111
Telephone:  (801) 961-1300
Facsimile: (801) 961-1311

*Attorneys for Plaintiffs*

---

## UNITED STATES DISTRICT COURT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| APG ENTERPRISES, INC., a Utah corporation; ASHLEIGH SOPHIA, LLC, a Utah limited liability company; ATLAS CAPITAL MANAGEMENT, LLC, a Utah limited liability company; BC HAVEN LIMITED, L.P., a Utah limited partnership; BPW FINANCIAL CORP., a Utah corporation; DINERO UNLIMITED, LLC f/k/a GROUP 88, LLC, a Florida limited liability company; FLORIN CAPITAL GROUP, LLC, an Arizona limited liability company; FORTE VENTURES, LLC, a Wyoming limited liability company; GLORY AND WEALTH, LLC f/k/a JUANG L. LIN, LLC, a Washington limited liability company; GOOD ONE ENTERPRISES, LLC, a Utah limited liability company; GREENHOUSE CAPITAL, LLC, a Utah limited liability company; GREG JOHNSON, an individual; JOHNSON & HELD LTD., a Colorado corporation; KM5 ENTERPRISES, LLC, a Utah limited liability company; L H BUSINESS SOLUTIONS, INC., a Utah corporation; MAGNOLIA DEVELOPMENT Incorporated, a California corporation; | **AMENDED COMPLAINT (Jury Trial Requested)**<br><br>Civil No. 2:08 cv 00951<br><br>Judge Campbell |

MEDITERRANEAN AVENUE, LLC, a Utah limited liability company; OPTIMAL RESOURCE MANAGEMENT CORPORATION, a Nevada corporation; PAYDAY FUNDING GROUP, LLC, a Utah limited liability company; PRATT & ASSOCIATES, INC., a Utah corporation; PS1 GROUP, LLC, a Utah limited liability company; PS1 GROUP, LLC, a Wyoming limited liability company; PSV GROUP, LLC, a Utah limited liability company; REBEL X DIVERSIFIED, LLC, a Utah limited liability company; RENEGADE BAY, LLC, a Wyoming limited liability company; SPYGLASS MANAGEMENT, LLC, a Utah limited liability company; THREE PALMS, LLC, a Wyoming limited liability company; TITAN ADVISORS, LLC, a Utah limited liability company; UTAHFILINGS.COM, LLC, a Utah limited liability company; UTAH MOUNTAIN, LLC, a Utah limited liability company; VEREDUS CAPITAL, LLC, a Utah limited liability company; WESTBROOK FINANCIAL INVESTMENTS, LLC, a Utah limited liability company; XSTAR FINANCIAL, LLC, a Wyoming limited liability company;

       Plaintiffs,

vs.

MONEY & MORE, INC, a Nevada corporation; EVOLUTION DEVELOPMENTS, LLC, a Wyoming limited liability company; GALE ROBINSON, an individual; LARRY BOSH, an individual; SHAWN BENSON, an individual; MIKE SMITH, an individual; and JOHN DOES 1 through 100,

       Defendants.

Plaintiffs, APG Enterprises, Inc.; Atlas Capital Management, LLC; BPW Financial Corp.; Dinero Unlimited, LLC f/k/a Group 88, LLC; Florin Capital Group, LLC; Glory and Wealth, LLC f/k/a Juang L. Lin, LLC; Johnson & Held Ltd.; KM5 Enterprises, LLC; LH Business Solutions, Inc.; Magnolia Development Incorporated; Optimal Resource Management Corporation; Payday Funding Group, LLC; Pratt & Associates, Inc.; Profitable Solutions, LLC; PS1 Group, LLC; PSV Group, LLC; Renegade Bay, LLC; Three Palms, LLC; Utah Mountain, LLC; Veredus Capital, LLC; Westbrook Financial Investments, LLC; and Xstar Financial, LLC; (collectively referred to hereinafter as "Plaintiffs," or "Investors"), by and through their legal counsel, Stucki Steele Pia & Anderson, bring this Complaint and aver, upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters based upon the investigation made by and through counsel, as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff APG Enterprises, Inc. ("APG") is a Utah corporation authorized to do business in Utah, with its principal place of business in Utah County, State of Utah.

2.      Plaintiff Ashleigh Sophia, LLC ("Ashleigh") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Utah County, State of Utah.

3.      Plaintiff Atlas Capital Management, LLC ("Atlas") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Utah County, State of Utah.

4.      Plaintiff BC Haven, LLC ("BC") is a Utah limited liability company, authorized

to do business in the State of Utah, with its principal place of business in Utah County, State of Utah.

5.      Plaintiff BPW Financial Corp. ("BPW") is a Utah corporation authorized to do business in the State of Utah, with its principal place of business in Salt Lake County, State of Utah.

6.      Plaintiff Dinero Unlimited, LLC f/k/a Group 88, LLC ("Dinero") is a Florida limited liability company, authorized to do business in both the States of Florida and Arizona, with its principal place of business in Maricopa County, State of Arizona.

7.      Plaintiff Florin Capital Fund I, LLC ("Florin") is an Arizona limited liability company, authorized to do business in the State of Arizona, with its principal place of business in Maricopa County, State of Arizona.

8.      Plaintiff Forte Ventures, LLC ("Forte") is a Wyoming limited liability company, authorized to do business in both the States of Wyoming and Utah, with its principle place of business in Utah County, State of Utah.

9.      Plaintiff Good One Enterprises, LLC ("Good One") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Utah County, State of Utah.

10.     Plaintiff Glory and Wealth, LLC f/k/a Juang L. Lin, LLC ("G&W") is a Washington limited liability company, authorized to do business in both the States of Washington and Arizona, with its principal place of business in Maricopa County, State of Arizona.

4

11.     Plaintiff Greenhouse Capital, LLC ("Greenhouse") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Utah County, State of Utah.

12.     Plaintiff Greg Johnson ("Johnson") is an individual who resides in Juab County, State of Utah.

13.     Plaintiff Johnson & Held Ltd. ("J&H") is a Colorado corporation, authorized to do business in the State of Colorado, with its principal place of business in Arapahoe County, State of Colorado.

14.     Plaintiff KM5 Enterprises, Inc. ("KM5") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Salt Lake County, State of Utah.

15.     Plaintiff LH Solutions, LLC ("LH") is a Wyoming limited liability company, authorized to do business in both the States of Wyoming and Utah, with its principal place of business in Salt Lake County, State of Utah.

16.     Plaintiff Magnolia Development Incorporated ("Magnolia") is a California corporation, authorized to do business in the State of California, with its principal place of business in Alameda County, State of California.

17.     Plaintiff Mediterranean Avenue, LLC is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Utah County, State of Utah.

18.     Plaintiff Optimal Resource Management Corporation ("ORM") is a Nevada

Corporation, authorized to do business in both the States of California and Nevada, with its principal place of business in Alameda County, State of California.

19.     Plaintiff Payday Funding Group, LLC ("PFG") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Salt Lake County, State of Utah.

20.     Plaintiff Pratt & Associates, Inc. ("Pratt") is a Utah corporation, authorized to do business in the State of Utah, with its principal place of business in Utah County, State of Utah.

21.     Plaintiff PS1 Group, LLC ("PS1 Utah") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Salt Lake County, State of Utah.

22.     Plaintiff PS1 Group, LLC ("PS1 Wyoming") is a Wyoming limited liability company, authorized to do business in both the States of Wyoming and Utah, with its principal place of business in Salt Lake County, State of Utah.

23.     Plaintiff PSV Group, LLC ("PSV") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Salt Lake County, State of Utah.

24.     Plaintiff Rebel X Diversified, LLC ("Rebel") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Salt Lake County, State of Utah.

25.     Plaintiff Renegade Bay, LLC ("Renegade") is a Wyoming limited liability company, authorized to do business in both the States of Wyoming and Utah, with its principal

place of business in Utah County, State of Utah.

26.     Plaintiff Spyglass Management, LLC ("Spyglass") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Utah County, State of Utah.

27.     Plaintiff Three Palms, LLC ("Three Palms") is a Wyoming limited liability company, authorized to do business in both the States of Wyoming and Arizona, with its principal place of business in Maricopa County, State of Arizona.

28.     Plaintiff Titan Advisors, LLC ("Titan") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Utah County, State of Utah.

29.     Plaintiff Utah Mountain, LLC ("UH") is a Wyoming limited liability company, authorized to do business in both the States of Wyoming and Utah, with its principal place of business in Salt Lake County, State of Utah.

30.     Plaintiff Utahfilings.com, LLC ("UF") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business in Salt Lake County, State of Utah.

31.     Plaintiff Veredus Capital, LLC ("Veredus") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of business at Utah County, State of Utah.

32.     Plaintiff Westbrook Financial Investments, LLC ("Westbrook") is a Utah limited liability company, authorized to do business in the State of Utah, with its principal place of

business in Salt Lake County, State of Utah.

33.     Plaintiff Xstar Financial, LLC, is a Wyoming limited liability company, authorized to do business in both the States of Wyoming and Utah, with its principal place of business in Weber County, State of Utah.

34.     Defendant Money & More, Inc. ("M&M"), is a Nevada corporation, which, upon information and belief, is authorized to do business in both the States of Nevada and California, with its principal place in Riverside County, State of California.

35.     Upon information and belief, Defendant Evolution Developments, LLC ("Evolution"), is a Wyoming limited liability company, which, upon information and belief, is authorized to do business in both the States of Wyoming and Utah, with its principal place of business in Utah County, State of Utah.  During all relevant times hereto, Evolution, upon information and belief, acted as the manager and/or an agent for the investment arm of M&M.

36.     Defendant Gale Robinson ("Robinson") is an individual, who, upon information and belief, resides in Riverside County, State of California, and at all relevant times hereto was the President of M&M.

37.     Defendant Larry Bosh ("Bosh") is an individual who, upon information and belief, resides in Juab County, State of Utah, and during the relevant time period was an owner/member and Manager of Evolution.

38.     Defendant Shawn Benson ("Benson") is an individual who, upon information and belief, resides in Washington County, State of Utah, and during the relevant time period was an

owner/member and Manager of Evolution.

39.     Defendant Michael J. Smith ("Smith") is an individual, who, upon information and belief, is currently incarcerated at the Englewood Federal Correctional Institute located in Littleton, Colorado, where since being convicted on or about March 6, 2008 he is serving a 36-month prison sentence for federal tax and fraud crimes.  Prior to his conviction, Smith was, upon information and belief, a resident of Juab County, State of Utah, and an owner/member and Manager of Evolution.

40.     Defendants John Doe 1 through 100 are officers, directors, agents, or representatives of M&M and/or Evolution, or other persons or entities who are or may be liable for the acts set forth herein.

41.     This Court has jurisdiction over the subject matter of this action pursuant to Sections 5(a), 5(c), 15 and 22 of the Securities Act, [15 U.S.C. §§ 77e(a), 77e(c), 77o and 77v]; Sections 10(b), 20(a) and 27 of the Exchange Act, [15 U.S. §§ 78j(b), 78t(a) and 78aa], Exchange Act Rule 10b-5, [17 C.F.R. § 240.10b-5]; and the federal RICO laws and regulations [18 U.S.C. § 1964; 28 U.S.C. §1331; and 28 U.S.C. §1367].

42.     Venue is appropriate in this Court pursuant to 15 U.S.C. § 77v, 18 U.S.C. § 1965 and 28 U.S.C. §1391(b).  The defendants have purposefully availed themselves of the rights and privileges of the State of Utah and a substantial part of the events or omissions giving rise to the claims set forth herein occurred in Utah.

## GENERAL ALLEGATIONS

*Overview of Defendants' Business Operations and Investment Raising Activities*

43.     M&M operates a deferred deposit loan transaction business (i.e. it provides short-term payday loans and advances) and, upon information and belief, holds the requisite Check Casher's Permit issued by the State of California to engage in such business.

44.     M&M presently conducts its loan business out of four separate offices located in or nearby Hemet, California.

45.     Upon information and belief, Robinson is the founder of M&M and has served as its President since its inception in approximately 2001.   During the relevant time period, Robinson has continually held herself out as being responsible for managing M&M's business affairs and its day-to-day operations.

46.     Evolution was, upon information and belief, organized in early June 2007 for the purpose of acting as the sole manager of the then-newly created investment arm of M&M's business and to also act as M&M's agent for the raising of new investment capital needed to fund M&M's desired expansion of its business operations.   Evolution acquired these exclusive appointments from M&M under the terms of a management agreement (the "Management Agreement"), which, upon information and belief, Evolution (or Bosh) and M&M executed shortly after Evolution's inception.   Upon acquiring these appointments in or about early June 2007, Evolution subsequently acted, on a continual basis, as the manager and/or agent for the investment arm of M&M's business until at least early October 2008.

47.     As the manager and/or an agent of M&M's investment arm, Evolution assisted

M&M in raising all, or virtually all, sums of investor capital paid to M&M during the period of time of approximately early June 2007 through early October 2008.

48.     Acting under the scope of its agency with M&M, Evolution (through the individual efforts of Bosh, Benson and Smith), assisted M&M in raising at least $59 million of investment capital from numerous separate investors (the "Investors"), including a combined sum of investment funds provided by Plaintiffs totaling over $28 million.

49.     Defendants raised all such investment funds through the offering and sale of investment contract securities, in the form of (a) written agreements, titled "Factor Agreements" (each an "Investor Agreement" and collectively, the "Investor Agreements"), which were separately entered into by and between M&M and each Investor (including each Plaintiff), and which each contain identical, or virtually identical, terms and provisions, excluding the particular investment amount paid by each Investor which appears on the Investor Agreements; and (b) oral agreements entered into (in certain instances, on multiple separate occasions) by and between M&M and many of the Investors (including the majority of Plaintiffs) following an Investor's execution of its written Investor Agreement, pursuant to which the Investor provided, subject to and in accordance with the same terms and conditions contained in the Investor's written Investor Agreement, additional amounts of investment funds to M&M (i.e. oral addendums to the Investor Agreement which modified only the principal amount of the investment funds paid to M&M indicated in the Investor Agreement (in order to account for the additional amounts invested by that Investor)).

50.     The process by which Defendants induced Plaintiffs and the other Investors to

invest in M&M was substantially similar in all material respects for each Investor.

51.     Evolution (primarily through Bosh), acting under the purview, knowledge, and direction of M&M and its principals, officers, managers, agents, and employees and for their benefit, initiated contact with each prospective Investor representing that it was doing so for the purpose of presenting to the Investor an investment opportunity with M&M.

52.     Bosh introduced Evolution to Plaintiffs as having been appointed by M&M as the manager of the investment arm of M&M's business, and represented that he was seeking to raise investment capital on behalf of M&M, which M&M would then use for the sole and exclusive purpose of funding payday loans to customers of M&M.

53.     During or shortly after this initial contact, the Investor was usually also introduced to Benson and Smith, individuals who Bosh represented were the other owners/Managers of Evolution and who, together with Bosh, served as the management team for M&M's investment segment.

54.     At no time during any of Plaintiffs' numerous communications with Bosh and/or any other Defendant that occurred prior to March 6, 2008 in connection with Plaintiffs' respective contemplated investments in M&M did any Defendant disclose to any Plaintiff any information relating to criminal charges for fraud pending against Smith, which, given that Smith's conviction on these charges occurred on or about March 6, 2008, were undoubtedly known to Defendants and pending at the time Defendants presented M&M's investment program to any Investor during early 2008.

55.     During the period of negotiations between each Plaintiff, on the one hand, and

Evolution, acting on behalf of M&M on the other hand, Evolution and M&M (primarily through Bosh and Robinson) repeatedly represented to Plaintiffs that M&M's business operations were extremely profitable and lucrative. Defendants also represented to each Plaintiff that investments with M&M were earning a return of ten percent (10%) per month (over two hundred percent (200%) annually when compounded) as a contractually agreed-upon monthly fee paid to each of M&M's Investors (the "Fee Payment") in exchange for M&M's use of the Investors' investment funds.

56.     Further, Defendants made numerous additional misrepresentations about M&M's financial status, including, among other things, M&M's monthly operating expenses and revenue, the projected revenue from M&M's current and anticipated future loans, the average estimated loan default rate, and the monthly Fee Payment obligation then-owed by M&M to all of its Investors. Defendants' representations regarding the purported profitability of M&M's operations were made in order to induce the Investors (including each Plaintiff) to invest money in M&M under the Investor Agreements.

57.     Defendants also provided certain financial records of M&M to each Plaintiff which according to Defendants' representations, contained information that supported these representations.

58.     In particular, beginning at the latest in or about January 2008, Defendants, upon information and belief, caused Perkins, M&M's Accounting Manager, to substantially alter and falsify the financial records of M&M to show that M&M's monthly business operations were profitable, when, in fact, they were not. Defendants provided these falsified financial records to

13

the Investors, including Plaintiffs, in order to induce the Investors to make initial and/or additional investments in M&M.

59.     For example, M&M's financial records for June 2008, which, upon information and belief, had been altered by Perkins and then distributed by Defendants to many prospective and existing Investors, provided that M&M's net income for that month exceeded $170,000. However, upon information and belief, M&M's actual net income for June 2008 was a loss of more than $9,000,000.

60.     Likewise, Defendants provided to numerous prospective and existing Investors certain financial records of M&M for July 2008, which, upon information and belief, had also been falsified by Perkins, and which showed net income of more than $2,000,000, when, in fact, M&M had losses during July 2008 of more than $11,000,000.

61.     Similar gross discrepancies exist between the monthly amounts of net income appearing in the altered financial records of M&M which Defendants provided to the Investors and the actual monthly amounts of substantial net losses which M&M incurred during each of the other months of 2008.

62.     Accordingly, upon information and belief and as previously noted above, beginning in or about January 2008 at the latest, M&M was not generating sufficient monthly revenue from its loan business to meet its then-existing obligations to make Fee Payments to Investors who, at that time, had already invested capital with M&M. Thus, beginning in or about 2007 or January 2008 at the latest and continuing until the present, Defendants knew that M&M could not perform any of its obligations regarding the payment of compensation owed to each

Investor for M&M's use (and/or the strict limitations on its use) of the investment funds set forth in the Investor Agreements, the oral agreements relating thereto and/or otherwise agreed upon by M&M with any and all Investors during that period of time..

63.      Evolution (through Bosh) also repeatedly represented to each Plaintiff that neither Evolution nor any other member of the management team for M&M's investment arm (including, among others, Bosh, Benson or Smith) would receive any management fee, commission, or similar compensation from the investment funds provided by any Plaintiff to M&M in connection with an investment of capital in M&M's business.

64.      Each Plaintiff ultimately determined to make an investment in M&M based on the representations made by Defendants provided at various times to each Plaintiff separately.

65.      Pursuant to the terms of the Investor Agreements, each Plaintiff agreed to invest an initial principal amount (the "Initial Investment Amount") with M&M within a short period of time following the execution of its Investor Agreement.

66.      Paragraph 2 of each Investor Agreement provides that the investment funds provided to M&M thereunder "**shall be used to acquire payday loan accounts-receivables _only_ and not for the general operation of [M&M's] business**."   (Emphasis added).   Upon information and belief, all other Investor Agreements contain language identical or virtually identical to that of Paragraph 2 of each Plaintiff's Investor Agreement.

67.      Paragraph 2 of each Investor Agreement also provides that all investment funds provided to M&M by each Plaintiff "will be assigned to a sub account belonging exclusively to [that Plaintiff]."   Upon information and belief, identical or virtually identical language is also

found in the Investor Agreements of each of the other Investors.

68.     Paragraph 3 of each Plaintiff's Investor Agreement provides that M&M agrees to pay such Plaintiff, on a monthly basis, the Fee Payment equal to "10% per month (30% per Quarter)" as a percentage of the investment funds provided by that Plaintiff to M&M in exchange for each Plaintiff's investment of such funds with M&M under its Investor Agreement. Paragraph 6 of the Investor Agreements similarly repeats that M&M shall pay to Plaintiff a fee (i.e. the Fee Payment) of "10% per month." The language used to describe the Fee Payments and the interest rate thereof set forth in Paragraphs 3 and 6 of each Plaintiff's Investor Agreement is also, upon information and belief, identical or substantially similar to the language and interest rate appearing in the Investor Agreements of all other Investors.

69.     Following Plaintiffs' respective payments of the Initial Investment Amount, the majority of Plaintiffs (and all other Investors) subsequently agreed to provide additional investment capital to M&M, subject to and in accordance with the terms and conditions of that Plaintiff's Investor Agreement..

70.     Prior to entering into each Investor Agreement and/or accepting any new or additional investment funds from any of Plaintiffs (and/or the other Investors), Defendants made no inquiry into the investment experience of any Investor nor made any effort to otherwise ascertain whether an Investor was an Unaccredited or not.  Upon information and belief, many of the Investors who invested monies in M&M were, and, to date, remain Unaccredited Investors (as that term is defined under the relevant securities laws and regulations).

71.     The Investor Agreements constitute investment contracts, and therefore, qualify as a security under Section 2(a)(1) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77b(a)(1), and Section 3(a)(10) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78(a)(10).

72.     Upon information and belief, no registration statement was filed or subsequently has been filed or is in effect with the Securities and Exchange Commission (the "SEC") in connection with any Plaintiff's execution of the Investor Agreement, the investment contract security offered and sold by Defendants to each Plaintiff separately.

73.     The Investor Agreements of Plaintiffs do not disclose any of the risks associated with investing in M&M nor contain any financial information about M&M nor of any Defendant.  Indeed, prior to each Plaintiff's signing of its respective Investor Agreement, neither Bosh, Robinson, Evolution, M&M nor any other Defendant provided to that Plaintiff any prospectus, offering memorandum, mandated disclosures or any other information relating to such Plaintiff's investment in M&M under its Investor Agreement, besides the certain financial records of M&M referenced above, which, upon information and belief, contained false information with respect to the profitability of M&M's operations.  To date, no Plaintiff has ever been provided copies of any such information by Defendants.

74.     Upon information and belief, no registration statement has ever been filed with any relevant state or federal securities regulator in connection with the offer or sale of any Investor Agreement by Defendants to an Investor, and no exemption from registration under any of the relevant state or federal securities laws applies.

75.     Moreover, upon information and belief, at the times each Plaintiff executed its respective Investor Agreement (and thereby these investment contract securities were offered and sold to each Plaintiff), none of the Defendants was registered as a securities agent or broker with any relevant state or federal securities regulator.

76.     Additionally, pursuant to the terms of the Investor Agreements and the representations made by Defendants, Defendants made misrepresentations to each Investor relative to promises for a return on each Investor's investment as well as the principal.

77.     In or about early August 2008, Defendants announced to the Investors of M&M (including Plaintiffs) that Defendants had begun taking steps which they claimed were necessary to bring M&M (and its investment raising activities in particular) into compliance with certain SEC requirements.  Thereafter, through a series of additional written communications to the Investors, Defendants represented that they were in the process of preparing, among other things, a Private Placement Memorandum (the "PPM"), which Defendants stated would be provided to each Investor along with a subscription agreement for execution by that Investor.

78.     In connection with Defendants preparation of the PPM, Defendants also circulated to the Investors a document titled "Preliminary Investor Suitability Questionnaire" (the "Investor Questionnaire"), which Defendants requested be completed and returned by each Investor.  Defendants represented that a completed Investor Questionnaire was required from each Investor in order to determine which of M&M's Investors were "Accredited Investors" and which were "Unaccredited Investors, as those terms are defined by the SEC and the securities laws.  According to Defendants, the accreditation status of each Investor was needed because no

18

more than 35 of M&M's Investors could be "Unaccredited Investors" if Defendants were to bring M&M into compliance with the SEC's requirements.

79.     Defendants also announced in connection with their requests to obtain the completed Investor Questionnaires that if it was determined that M&M had more than 35 Unaccredited Investors, then certain of those Unaccredited Investors, may have their investment funds refunded and their investment with M&M terminate as a result.

80.     While Defendants continued to circulate additional written communications to the Investors relating to the PPM from time to time during an approximately 45 day period, ultimately, Defendants failed to circulate a completed draft of the PPM to the Investors or otherwise take any further concrete action designed to address or respond to the SEC compliance issues, which according to Defendants M&M currently faced.

81.     Indeed, despite repeatedly acknowledging that Defendants had failed to comply with the SEC's requirements in conducting their investment raising activities with the Investors and that Defendants needed to bring M&M into compliance with those requirements, Defendants, upon information and belief, continued to raise additional investment capital for M&M from new or existing Investors without making any changes to the methods and procedures they employed.

82.     On or about October 1, 2008, Defendants circulated an email to the Investors, including each Plaintiff, wherein Defendants announced that effective October 6, 2008 (the "Investment Deadline"), Defendants would no longer accept any additional investment capital in M&M from either new or existing Investors.  Besides stating M&M's desire to proceed in the

future as a "self-funded company," Defendants provided no explanation to the Investors for the sudden and dramatic change of policy or the reasoning behind the decision to make such a change within only days of its announcement.  Following the announcement, during subsequent private communications with many of the Investors, Defendants encouraged the Investors to invest additional monies in M&M before the Investment Deadline.  Despite representing that no additional investment monies would be accepted after the Investment Deadline (allegedly so that M&M could thereby promptly make the switch to operate as a "self-funded company"), Defendants accepted investment monies from numerous different new and existing Investors after the Investment Deadline.

83.     Defendants' representation to the Investors that the decision to discontinue the acceptance of additional investment funds following the Investment Deadline was based on M&M's desire to operate as a self-funded company, is belied by the fact thatat the time Defendants made this announcement, M&M's debt (both from its operations and that owed to its Investors) was so substantial that Defendants could not have reasonably believed that M&M could begin operating as a self-funded company within the time period contemplated by Defendants.

84.     Based on Defendants' sudden and arbitrary decision to establish the Investment Deadline, and their acceptance of large amounts of investment funds after the Deadline, Defendants' purpose for announcing the Investment Deadline was, upon information and belief, to quickly acquire a large influx of investment capital from Investors by persuading them, under false pretenses, that there existed only a short and final window of opportunity to make an

additional investment in M&M and that if the Investors failed to hastily act prior to the Investment Deadline, this window of opportunity would be forever closed.

85.     Upon information and belief, M&M has failed to make any Fee Payments owed to any of the Investors who provided additional investment funds to M&M since October 1, 2008, which Fee Payments, pursuant to the terms of the Investor Agreements, M&M was required to begin paying 30 days after the date of investment.

86.     While M&M made payment of the scheduled Fee Payments until approximately mid-October 2008 owed to all Plaintiffs (except to BPW, which has not received a single Fee Payment since investing in M&M in early October 2008), M&M has failed to make any Fee Payments since then.

87.     On or about November 26, 2008, during an investors meeting held at M&M's offices in Hemet, California, Plaintiffs learned for the first time, along with most, if not all, other Investors of the existence of the Management Agreement and M&M's promise thereunder to pay Evolution and/or Bosh a sales commission ("Sales Commission") equal to 10% of the total investment capital raised by Bosh (and Evolution) on behalf of M&M plus an ongoing monthly management fee of 1.66% per month of such total investment amount (the "Management Fee").

88.     As previously stated, however, none of M&M, Evolution, their respective agents or principals, (including Robinson, Bosh, Smith, or Benson), were properly registered with the State of California, the State of Utah, the SEC, or any other regulatory body to solicit or manage clients' funds at the times M&M paid the Sales Commissions and Management Fee in connection with the raising of investment capital by Evolution/Bosh on behalf of M&M. As a

21

result of the payment of such Sales Commission and Management Fee to Bosh/Evolution, upon information and belief, M&M paid an unregistered selling agent(s) a commission from the money they raised from Plaintiffs.

89.     As also alleged above, according to the express terms of each Plaintiff's Investor Agreement, all investment funds provided by Plaintiffs to M&M pursuant to the Investor Agreement were to be used for the sole and exclusive purpose of funding payday loans by M&M to its customers.  The Investor Agreements of Plaintiffs contain no exception for the payment of any Sales Commission or Management Fee to Bosh (and/ or Evolution) out of the investment funds provided to M&M.

90.     Certain of Plaintiffs have made a written request to M&M asking for the return of the combined principal amount of investment funds which those Plaintiffs have paid to M&M under their respective Investor Agreements.  To date, M&M has provided no response whatsoever to these Plaintiffs' requests.   Upon information and belief, M&M has likewise ignored and/or rejected several similar requests by other Investors.

***Summary of Defendants' Misrepresentations***

91.     Defendants represented that funds invested with M&M were earning and would continue to earn extraordinary annual returns in the form of the monthly Fee Payments (i.e. interest payments) of 10% monthly..

92.     Defendants' promise to make the monthly Fee Payments in the agreed-upon amounts to each Investor was a blatant misrepresentation because M&M was not capable of generating profits from its use of the investment funds in amounts sufficient to cover payment of

22

the scheduled monthly Fee Payments M&M owed to its Investors, without the operation of a Ponzi scheme..

93.     Further, Defendantshad no reasonable basis to believe, based on their knowledge of M&M's financial performance and revenues generated during prior months, that M&M would generate a sufficient amount of revenues from its business operations for M&M to fulfill the Fee Payment obligation owed to each of its Investors under the Investor Agreements.

94.     Defendants further misrepresented to the Investors that, according to the terms of the Investor Agreements and representations repeatedly made by Defendants, all investment funds provided by the Investors to M&M pursuant to the Investor Agreements would be used by M&M for the sole and exclusive purpose of funding payday loans to its customers.

95.     Defendants knew, however, at the times they made such promises to the Investors that, contrary to Defendants' representations and promises, the investment funds provided by the Investors were being used by M&M for purposes other than the funding of payday loans to customers.

96.     Defendants failed to disclose to the Investors, including Plaintiffs, prior to the times the Investors entered into their respective Investor Agreements with M&M, the existence of the Management Agreement in which M&Magreed to pay Evolution (and/or Bosh) a sales commission equal to 10% of the aggregate amount of investment capital raised by Evolution (and/or through the efforts of Bosh) from the combined group of Investors, plus an ongoing monthly management fee of 1.66% per month of such aggregate investment amount.  In direct contravention of each Plaintiff's Investor Agreement, M&M, upon information and belief, used a

portion of the investment funds provided by each Investor to pay the commissions and fees M&M owed to Evolution (and/or Bosh) under the Management Agreement.

97.      M&M also used a significant portion of the principal amount of the investment funds provided by each Investor to pay the the monthly Fee Payments M&M owed to its group of Investors.  Indeed, upon information and belief, beginning in January 2008, at the latest, the amount of revenue generated each month from M&M's customer loans combined with the remaining principal amount of all investment funds provided by Investors to M&M prior to that time was insufficient to cover the aggregate amount of the monthly Fee Payment obligations owed by M&M to the Investors.

98.      Accordingly, beginning in January 2008, at the latest, Defendants investment program operated as a Ponzi scheme, *i.e.* a scheme whereby M&M paid the monthly Fee Payments to the Investors (under their respective Investor Agreements) from the investment monies contributed by other new Investors to M&M (and/or from the principal amount of an Investor's own investment monies provided to M&M) and not through the revenue generated by M&M through its making of payday loans.

99.      Over the course of the entire scheme, Defendants used only a fraction of the funds raised from Investors to fund payday loans.

100.     While many of the Investors received their promised monthly Fee Payments from M&M for a period of time under Defendants' fraudulent scheme using the investment funds of other Investors and not revenues generated by customer loans, eventually, beginning in approximately mid-October 2008, shortly after Defendants had solicited and received a large

amount of additional investment funds from several new and existing Investors, M&M ceased making any and all scheduled monthly Fee Payments owed to its Investors under the Investor Agreements.

101.    Defendants have recently admitted that M&M's business model at present cannot nor at any time could support the return on investment Defendants promised to the Investors and that M&M therefore has no ability whatsoever to fulfill the obligations it owes to the Investors under the Investor Agreements.

102.    Defendants have refused to comply with several requests from Investors asking for a return of the principal amount of their investments.  Defendants have also represented to the Investors that, at most, the Investors may be repaid the principal amount of their investment in M&M but are unwilling or unable to state when such refunds may be made.

***Control Person Liability of Individual Defendants***

103.    Robinson, at all relevant times hereto, was the President of M&M and is therefore a control person as defined in the Securities Act [15 U.S.C. § 77o], the Exchange Act, Section 20(a) [15 U.S.C. § 78t], and in Utah Code Ann. § 61-1-22(4).

104.    Bosh, at all relevant times hereto, was a Manager of Evolution and is therefore a control person as defined in the Securities Act [15 U.S.C. § 77o], the Exchange Act, Section 20(a) [15 U.S.C. § 78t], and in Utah Code Ann. § 61-1-22(4).

105.    Upon information and belief, Robinson had knowledge of the misrepresentations and omissions alleged herein, and participated and/or aided in the offering and sales of the investment contract securities to Plaintiffs and the other Investors.

25

106.    As the President of M&M, Robinson directed and controlled, directly or indirectly, the management and policies of M&M, including those of its investment arm, and the actions of Evolution (and/or Bosh, Benson and Smith) who were raising money for M&M through the offerings described herein.

107.    Upon information and belief, Bosh had knowledge of the misrepresentations and omissions alleged herein, and participated and/or aided in the offering and sales of the investment contract securities to Plaintiffs and the other Investors.

108.    Benson, at all relevant times hereto, was a Manager of Evolution and is therefore a control person as defined in the Securities Act [15 U.S.C. § 77o], the Exchange Act, Section 20(a) [15 U.S.C. § 78t], and in Utah Code Ann. § 61-1-22(4).

109.    Upon information and belief, Benson had knowledge of the misrepresentations and omissions alleged herein, and participated and/or aided in the offering and sales of the investment contract securities to Plaintiffs and the other Investors.

110.    Smith, at all relevant times hereto up until his conviction and subsequent incarceration on or about March 6, 2008, was a Manager of Evolution and is therefore a control person as defined in the Securities Act [15 U.S.C. § 77o], the Exchange Act, Section 20(a) [15 U.S.C. § 78t], and in Utah Code Ann. § 61-1-22(4).

111.    Upon information and belief, Smith had knowledge of the misrepresentations and omissions alleged herein, and participated and/or aided in the offering and sales of the investment contract securities to Plaintiffs and the other Investors.

## FIRST CAUSE OF ACTION
### (Breach of Express and Oral/Implied Contracts—Against M&M)

112.     Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

113.     According to the terms of the express, oral, and implied agreements set forth in the general allectaions, Defendants were obligated to use Investors' money in a prescribed manner, make payments to Investors as set forth herein, and act in other required ways.

114.     The Investors have performed all of the obligations it owed to Defendants pursuant to the terms of the parties' agreements.

115.     Defendants failed to make Fee Payments in the required amounts in breach of the Investor Agreements.

116.     Defendants failed to use Investors' money in accordance with the parties' agreement, including, without limitation Paragraph 2 of each Plaintiff's Investor Agreement.

117.     M&M's failure to timely perform its obligations under the parties' agreements as set forth in the General Allegations constitutes a material breach thereof.

118.     As a direct and proximate result of Defendants' breaches of the parties' agreements, Investors have been damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**Violations of Sections 5(a) and 5(c) of the Securities Act
(Sale of Unregistered Securities—Against All Defendants)**

119.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

120.    In soliciting Plaintiffs' investments in M&M, Defendants directed numerous contacts and communications to Plaintiffs by mail, telephone, facsimile and/or email.

121.    No registration statement was filed or in effect with the SEC pursuant to the Securities Act and no exemption from registration exists with respect to the securities and transactions described herein.

122.    Since, upon information and belief, at least June 2007 through the present, Defendants, directly and indirectly, have been: (a) making use of the means or instruments of transportation or communication in interstate commerce or of the mails, including emails, to sell securities as described herein, through the use or medium of a prospectus or otherwise; (b) carrying securities or causing such securities, as described herein, to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or (c) making use of the means or instruments of transportation or communication in interstate commerce or of the mails, including emails, to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, as described herein, without a registration statement having been filed or being in effect with the SEC as to such securities.

123.    By reason of the foregoing, Defendants, directly and indirectly, have violated, and

unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## THIRD CAUSE OF ACTION

### Violations of Section 17(a)(1) of the Securities Act
### (Antifraud violations—Against all Defendants)

124.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

125.    From at least June 2007 through the present, Defendants, in connection with the offer and sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce or by the use of the mails, including emails, directly and indirectly, have employed and are employing devices, schemes and artifices to defraud.

126.    Defendants knew or were reckless in not knowing of the activities described above.

127.    By reason of the activities herein described, the Defendants have violated and are violating Section 17(a)(1) of the Securities Act [15 U.S.C. §77q(a)(1)].

## FOURTH CAUSE OF ACTION

### Violations of Section 17(a)(2) and 17(a)(3) of the Securities Act
### (Antifraud violations—Against all Defendants)

128.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

129.    From at least June 2007 through the present, Defendants, in connection with the offer and sale of securities, by the use of the means and instruments of transportation and

communication in interstate commerce or by the use of the mails, including emails, directly and indirectly, have obtained and are obtaining money and property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and have engaged and are engaging in transactions, practices or courses of business which have operated and will operate as a fraud and deceit upon Investors.

By reason of the activities herein described, the Defendants have violated and are violating Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §77q(a)(2) and §77q(a)(3)].

### FIFTH CAUSE OF ACTION

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**(Antifraud violations—Against all Defendants)**

130.   Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

131.   From at least June 2007 through the present, Defendants, in connection with the offer and sale of securities, directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, including emails, have employed and are employing devices, schemes and artifices to defraud; have made and are making untrue statements of material fact and have and are omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and have engaged and are engaging in acts, practices and courses of business which operated as a fraud and deceit upon Investors.

132.    Defendants knew or were reckless in not knowing of the activities described above.

133.    By reason of the activities herein described, the Defendants have violated and are violating Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder.

### SIXTH CAUSE OF ACTION

**Violations, and Aiding and Abetting Violations, of Section 15(c)(1) Of The Exchange Act, 15 U.S.C. §78o(c)(1), And Rule 10b-3, 17 C.F.R. §240.10b-3 (Antifraud violations by Brokers—Against Evolution, Bosh, Benson, and Smith)**

134.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

135.    Evolutions, including its Managers, Bosh, Benson and Smith (collectively, the "Broker Defendants"), engaged and are engaging in the business of effecting transactions in securities for the accounts of others, and therefore were and are brokers within the meaning of Section 3(a)(4) of the Exchange Act, 15 U.S.C. §78c(a)(4).

136.    The Broker Defendants, while acting as brokers, directly or indirectly, by use of the mails, including emails, or the means or instrumentalities of interstate commerce, has effected and is effecting transactions in, and has induced and attempted to induce and are attempting to induce the purchase or sale of, securities by means of manipulative, deceptive, or other fraudulent devices or contrivances, including: (a) acts, practices, and courses of business that operated or would have operated as a fraud or deceit upon any person, including persons to whom the Broker Defendants offered and/or sold securities; and (b) making untrue statements of

material fact and omissions to state a material fact necessary, in order to make the statements made, in light of the circumstances under which they were made, not misleading with knowledge or reasonable grounds to believe that such statements are untrue or misleading.

137.    As part of and in furtherance of this violative conduct, Broker Defendants offered and/or sold securities by making the material misrepresentations and omissions set forth herein.

138.    Broker Defendants knew, were reckless in not knowing, or had reasonable grounds to believe that said representations or omissions were false or misleading.

139.    By reason of the foregoing, Broker Defendants violated, and, unless restrained and enjoined, will again violate Section 15(c)(1) of the Exchange Act, 15 U.S.C. §78o(c)(1), and Rule 10b-3, 17 C.F.R. §240.10b-3.

140.    By reason of the foregoing, Robinson aided and abetted, and, unless restrained and enjoined, will again aid and abet, Broker Defendants' violations of Section 15(c)(1) of the Exchange Act, 15 U.S.C. §78o(c)(1), and Rule 10b-3, 17 C.F.R. §240.10b-3.

<u>**SEVENTH CAUSE OF ACTION**</u>

**Violations of Section 15(a) of the Exchange Act, 15 U.S.C. §78o(a)**
**(Registration violations by Brokers—Against Broker Defendants)**

141.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

142.    Each of Broker Defendants, when he/it was neither registered with the SEC as a broker nor a properly licensed associated person of a registered broker-dealer, made use of the mails, including emails, or means and instrumentalities of interstate commerce to effect

transactions in, or to induce or attempt to induce the purchase or sale of securities.

143.    During the time of the transactions and events alleged in this Complaint, Broker Defendants were neither registered with the SEC as a broker nor properly licensed to sell securities as an associated person of any registered broker-dealer.

144.    By reason of the foregoing, Broker Defendants violated and, unless restrained and enjoined, will again violate Section 15(a)(1) of the Exchange Act, 15 U.S.C. §78o(a)(1).

## EIGHTH  CAUSE OF ACTION

**Violations, and Aiding and Abetting Violations, of Section 15(b) of the Exchange Act and Rule 15b7-1 thereunder, 15 U.S.C. § 78o(b) and 17 C.F.R. § 240.15b7-1 (Use of Unregistered Salespersons –Against Broker Defendants)**

145.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

146.    As a result of the conduct set forth above, Broker Defendants willfully violated Section 15(b) of the Exchange Act and Rule 15b7-1 promulgated thereunder, 15 U.S.C. § 78o(b) and 17 C.F.R. § 240.15b7-1.

147.    Defendants Robinson aided and abetted Broker Defendants' violations of Section 15(b) of the Exchange Act and Rule 15b7-1 promulgated thereunder, 15 U.S.C. § 78o(b) and 17 C.F.R. § 240.15b7-1.

## NINTH CAUSE OF ACTION

**Violations, and Aiding and Abetting Violations, of Section 15(b) of the Exchange Act and Rules 15b1-1 and 15b3-1 thereunder, 15 U.S.C. § 78o(b) and 17 C.F.R. §§ 240.15b1-1, 240.15b3-1**
**(Undisclosed Control Persons –Against Broker Defendants)**

148.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

149.    Broker Defendants failed to disclose to the SEC, as required, that Smith exercised control, directly or indirectly, over Broker Defendants' management and policies, through agreement or otherwise, and that Smith had been convicted on felony tax fraud charges.

150.    As a result, Broker Defendants violated Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b), and Rules 15b1-1 and 15b3-1 promulgated thereunder, and 17 C.F.R. §§ 240.15b1-1, 240.15b3-1.

## TENTH CAUSE OF ACTION

**(Violation of State Securities Law – Against all Defendants)**

151.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

152.    The Investor Agreements that Defendants sold or provided to Plaintiffs and the other Investors constitute investment contract "securities" within the meaning of Section 61-1-13(24)(a) of the Utah Uniform Securities Act, Utah Code Ann. § 61-1-1, et seq.

153.    At all relevant times herein, each of the Defendants was a "person" within the meaning of Utah Code Ann. § 61-1-13(19).

34

154.    Neither Plaintiffs' Investor Agreements nor the Investor Agreements of any other Investor was registered pursuant to Utah Code Ann. § 61-1-1 *et. seq*, and such Agreements were not exempted nor were they a federal covered security for which a notice was filed pursuant to Utah Code Ann. § 61-1-15.5.

155.    In connection with inducing Plaintiffs and each of the other Investors to provide investment funds to M&M, acting individually and in concert, directly and indirectly, Defendants engaged and participated in and/or aided and abetted a continuous course of conduct and conspiracy to misrepresent and to conceal adverse material facts, as specified herein. Defendants used means and instrumentalities of interstate and intrastate commerce or the mails (a) to employ a device, scheme or artifice to defraud the individual Investors, or (b) to obtain their money or property by means of untrue statements of material fact (or by omitting to state material facts necessary in order to avoid misleading the investors), or (c) to engage in transactions, practices or courses of business operating as a fraud or deceit upon the investors, in violation of Utah Code Ann. §§ 61-1-1 and 61-1-2.

156.    Defendants are liable as direct participants in and/or as aiders and abettors of the wrongs complained of herein.  Defendants were able to (and did) control, directly or indirectly, the content of the public statements and other statements disseminated by M&M, within the meaning of Utah Code Annotated § 61-1-22(4)(a).

157.    In particular, Defendants made the material misrepresentations and/or omissions set forth in the foregoing paragraphs of this Complaint.

158.    By failing to inform Plaintiffs or any of the other Investors of material facts,

Defendants omitted to state material facts necessary in order to avoid misleading Plaintiffs and the other Investors. The material misrepresentations and omissions described herein were intentionally or recklessly made.

159.    In reliance upon the above material misrepresentations, and lulled by the above material misrepresentations or omissions, the Investors, including Plaintiffs, executed their respective Investor Agreements and thereby invested in M&M.

160.    Bosh, Robinson, Benson and Smith committed and knowingly aided and abetted the violations of Utah's securities laws as set forth in this claim for relief. Moreover, each were "controlling persons" within the meaning of the applicable securities laws. Among other things, Bosh, Robinson, Benson and Smith aided and abetted Evolution and M&M and others in the sale of the Investor Agreements to the Investors. Due to their management positions these Defendants directed the management and policies of Evolution, M&M and others.

161.    At all relevant times, each of the Defendants controlled Evolution and M&M, and are, therefore, jointly and severally liable to Plaintiffs.

162.    Defendants have violated Sections 61-1-1 and 61-1-22 of the Utah Uniform Securities Act, and Plaintiffs are entitled to recover damages from the Defendants in an amount to be determined at trial, together with interest from the date of payment, plus costs and reasonable attorneys' fees.

163.    Additionally, pursuant to Section 61-1-22(2), Utah Code Ann., Defendants should be required to pay to Plaintiffs three times the consideration paid by Plaintiff pursuant to the Investor Agreements as investment funds in M&M, together with interest, costs, and attorneys' fees.

**ELEVENTH CAUSE OF ACTION**

**(Civil Violation of 18 U.S.C. § 1961, et seq. – Against all Defendants)**

164.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

165.    At all times herein, each Defendant was a "person" as defined by 18 U.S.C. § 1961(3).

166.    Each Defendant was an enterprise engaged in interstate or foreign commerce, or the activities of which affected interstate or foreign commerce, as defined by U.S.C. § 1962(b).

167.    Pursuant to 18 U.S.C. § 1962(b), Defendants engaged in a pattern of racketeering activity, including the sale of fraudulent securities, acts of mail fraud and acts of wire fraud as described above.  Defendants operated and sold investments in M&M; conducted the fraudulent schemes in which they directed M&M and other individuals and entities to engage; and concealed their fraudulent activities, thereby permitting the Defendants to continue to operate and wrongfully profit from M&M.

168.    At all times herein, each of the Defendants engaged in an "enterprise" within the meaning of 18 U.S.C.  §§ 1961(4), 1962(c).

169.    This enterprise came into being with the creation of M&M's investment arm and

the appointment of Evolution (and/or Bosh) as the manager and or agent thereof continued thereafter as each of the Defendants participated in the scheme to fraudulently solicit investments in M&M, which constituted fraudulent sales of securities.

170.    Throughout the course of the events described in this Complaint, Defendants conducted, controlled, or participated in the enterprise affairs, including playing a part in directing those affairs, as corporate officers, leading formulators of the fraudulent schemes, and key executors of those schemes on behalf of the enterprise, by engaging in a series of illegal acts, defined as "racketeering activity" by 18 U.S.C. § 1961(1), including the fraudulent sale of securities, mail fraud, and wire fraud.

171.    These acts were all related to one another in that they advanced the objects of the conspiracies described herein, in which Defendants played major roles.

172.    Defendants engaged in the sale of fraudulent securities and engaged in schemes to defraud investors and to deprive Plaintiffs of assets and funds.

173.    Each of these schemes was furthered through the use of United States Mail or of the interstate wires.  Each such transaction constitutes mail fraud under 18 U.S.C. § 1341 or of wire fraud under 18 U.S.C. § 1343 and is, therefore, a separate racketeering act.

174.    At all times herein, there existed a racketeering enterprise within the meaning of 18 U.S.C. §§ 1962 (b) and 1962(c) engaged in interstate or foreign commerce whose activities affected interstate or foreign commerce.

175.    The acts alleged above constituted primary violations of 18 U.S.C. § 1962 (b) and/or (c).

176.    Defendants agreed to participate in the racketeering affairs of the enterprise when they agreed to the activities described in this Complaint.  In so agreeing, Defendants also agreed to commit two or more predicate acts, and Defendants committed multiple acts of securities, mail and wire fraud.

177.    Plaintiffs suffered injury to its person or property as a proximate result of the primary violation in an amount to be proven at trial.  Defendants are also liable to Plaintiff for damages in the amount of three times the actual damages so proven.

## TWELFTH CAUSE OF ACTION

**(Civil Violation of U.C.A. 76-10-1601, et.seq. – Against all Defendants)**

178.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

179.    At all times herein, each of the Defendants was a "person" as defined by Utah Code Ann. § 76-10-1602(3).

180.    At all times herein, each of the Defendants engaged in an "enterprise" within the meaning of Utah Code Ann. § 76-10-1602(1).

181.    This enterprise came into being with the creation of M&M's investment arm and the appointment of Evolution (and/or Bosh) as the manager and or agent thereof and continued thereafter as each of the Defendants participated in the scheme to fraudulently solicit investments in M&M.

182.    Pursuant to Utah Code Ann. § 76-10-1603, Defendants engaged in a "pattern of

unlawful activity" within the meaning of Utah Code Ann. § 76-10-1602(2), including the unlawful sale of fraudulent securities, acts of mail fraud, and acts of wire fraud as described above: Defendants operated M&M, conducted the fraudulent schemes in which they directed M&M and other entities to engage, and concealed their fraudulent activities, thereby permitting Defendants to continue to operate and wrongfully profit from M&M and other entities.

183.    Throughout the course of the events described in this Complaint, Defendants conducted, controlled, or participated in the enterprise affairs, including playing a part in directing those affairs, as corporate officers, leading formulators of the fraudulent schemes, and key executors of those schemes on behalf of the enterprise, by engaging in a series of illegal acts, including the fraudulent sale of securities, mail fraud, and wire fraud.

184.    These acts were all related to one another in that they advanced the objects of the fraudulent activities described herein, in which Defendants played major roles.  In this manner, each of the Defendants engaged in an unlawful conspiracy, in violation of Utah Code Ann. § 6-10-1603(4).

185.    Each Plaintiff suffered injury to its person or property as a proximate result of the primary violation in an amount to be proven at trial.  Defendants are also liable to Plaintiffs for damages in the amount of two times the actual damages so proven, in addition to the costs of suit, including reasonable attorneys' fees.

## THIRTEENTH CAUSE OF ACTION

### (Civil Conspiracy – Against all Defendants)

186.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

187.    Defendants knowingly joined and agreed to a plan to obtain money from Plaintiffs under false pretenses and in violation of applicable law.

188.    Defendants combined with each other to make the misrepresentations and omissions described in this Complaint.

189.    Each of the misrepresentations and omissions described herein and the transactions which led to them were overt acts undertaken in furtherance of these conspiracies.

190.    As a direct result, Plaintiffs have been damaged in an amount to be proven at trial.

191.    Based on Defendants' intentional and malicious conduct, Plaintiffs also are entitled to recover punitive damages from Defendants.

## FOURTEENTH CAUSE OF ACTION

### (Common Law Fraud and/or Negligent Misrepresentation – Against all Defendants)

192.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

193.    Defendants, individually or collectively, participated in or made each of the misrepresentations and omissions described in the foregoing sections of this Complaint.

194.    Each of the omissions described above are related to a material matter and the Defendants had a duty to speak to Plaintiffs with regard to each of the omissions for at least the

following reasons:

      a.      The disclosure of these omissions was necessary in order to prevent the affirmative representations made with respect to the investment from being misleading.

      b.      The omissions were facts basic to the solicitation, marketing, and procuring of the investments themselves.

      c.      Defendants made misleading partial representations with respect to the same subject matter as the omissions referenced herein.

      d.      Defendants actively and intentionally concealed and omitted facts from Plaintiff.

195.    Each of these misrepresentations and omissions concerned a then existing material fact.  The material misrepresentations were false and  Defendants knew each of these misrepresentations were false.  Each of these misrepresentations and omissions were made for the purpose of inducing Plaintiffs to rely on the misrepresentation and/or omission so that Plaintiffs would provide investment funds to Defendants.

196.    In the alternative, Defendants should have known that the representations made to Plaintiffs were false, and Defendants were negligent in acquiring or communicating information to Plaintiffs.  Defendants also had a pecuniary interest in all of the affairs of M&M, and had superior knowledge of the subject matter of the misrepresentations and omissions made to Plaintiffs.

197.    Plaintiffs were ignorant of the falsity of each of these misrepresentations and omissions, and they reasonably relied on these misrepresentations and omissions.

198.     As a direct, proximate, and foreseeable result of Plaintiffs' reasonable reliance on these misrepresentations and omissions, Plaintiffs were damaged in an amount to be determined at trial.

199.     As a result of the fraud, negligent misrepresentations, and omissions made by the Defendants, Plaintiffs have been damaged in an amount to be determined at trial.

200.     Based on Defendants' malicious, wanton, and intentional behavior, Plaintiffs also are entitled to recover punitive damages from Defendants.

<u>**FIFTEENTH CAUSE OF ACTION**</u>

**(Conversion – Against all Defendants)**

201.     Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

202.     Defendants were obligated to (a) keep each Plaintiff's investment funds in a separate, segregated sub account owned exclusively by such Plaintiff and (b) use the investment funds from such sub accounts only for the funding of payday loans.

203.     Defendants diverted Plaintiffs' funds and used them for other purposes as set forth above and failed to keep the funds in segregated subaccounts.

204.     Plaintiffs have demanded return of the diverted funds and hereby again demand return of those funds.

205.     Defendants have refused to return the diverted funds.

206.     By reason of the foregoing, Defendants, with the intent to wrongfully appropriate

and assume ownership of the diverted funds, have intentionally assumed and exercised the right of ownership over the diverted funds to the exclusion of the Plaintiffs' rights of ownership.

207.    Such taking and continued exercise of the right of ownership over the diverted funds was and is wrongful, intentional, and malicious.

208.    Plaintiffs hereby request that the Court declare that Defendants have converted the diverted funds and award to Plaintiffs damages in an amount equal to the diverted funds.

209.    The actions constituting conversion by Defendants have been taken with an intent indicating malice, fraud, and/or wanton disregard for the rights of Plaintiffs.    Therefore, Plaintiffs are entitled to punitive damages.

## SIXTEENTH CAUSE OF ACTION

### (Unjust Enrichment – Against all Defendants)

210.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

211.    Defendants received Plaintiffs' monies in exchange for the worthless promise of the monthly Fee Payments by M&M.

212.    Acceptance and retention by Defendants of the monies Plaintiffs paid under Plaintiffs' Investor Agreements is inequitable insofar as it deprives Plaintiffs of funds that rightfully belong to them.

213.    By reason of Defendants' unjust enrichment, Plaintiffs sustained damages in an amount to be determined at trial.

214.    Plaintiffs are entitled to recover the amounts they paid to Defendants pursuant to the parties' agreements, plus interest.

## SEVENTEENTH CAUSE OF ACTION

### (Declaratory Relief – Against all Defendants)

215.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

216.    This action has been brought by Investors to among other things determine the claims and rights of each of the investors in M&M and other related entities and/or persons.

217.    This is an appropriate action for this Court to declare the respective rights of the parties and the ownership in and to the assets in possession and control of Defendants.

218.    Plaintiffs request that the Court declare the rights of the Investors with respect to their investments and the assets of Defendants.

## EIGHTEENTH CAUSE OF ACTION

### (Constructive Trust)

219.     Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

220.    Based on the allegations set forth above in the General Allegations, Defendants improperly received monies from Plaintiffs and the other Investors.

221.    Defendants improperly retained the benefits of their wrongful acts.

222.    Defendants were unjustly enriched by their wrongful acts.

223.    The specific monies wrongfully retained by Defendants are traceable to

Defendants bank accounts based on each of the wires or numbered checks written by the Investors, including Plaintiffs, and deposited by Defendants.

224.    Injustice would result if Defendants were able to keep monies that rightfully belong to Plaintiffs and the other Investors.

225.    A constructive trust should be imposed on the accounts of Defendants over any monies or assets received by Defendants.

## NINETEENTH CAUSE OF ACTION

### (Accounting – Against M&M)

226.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

227.    As investors in M&M, who, pursuant to the terms of their respective Investor Agreements hold a security interest in M&M's account receivables equal in value to the aggregate amount of investment funds Plaintiffs provided to M&M, Plaintiffs are entitled to an accounting pursuant to their Investor Agreements.

228.    Plaintiffs seeks and are entitled to a full accounting to determine, without limitation, whether and to what extent (a) the individual Defendants, Robinson, Bosh, Benson and Smith, received commissions, fees, distributions or any other compensation from M&M using a portion of investment monies Plaintiff provided to M&M; and/or (b) Plaintiffs' investment monies were used by M&M for any purpose other than to fund payday loans to M&M's customers, contrary to the terms of the Investor Agreements of Plaintiffs and Defendants representations that all of Plaintiffs' investment funds in M&M would be used solely

and exclusively for the funding of payday loans.

## TWENTIETH CAUSE OF ACTION

### (Temporary Restraining Order/Injunctive Relief)

229.    Plaintiffs reallege and incorporate by reference the other paragraphs of this Complaint.

230.    Upon information and belief, Defendants continue to use the investment funds provided by Plaintiffs to M&M for purposes other than the funding of payday loans, in violation of the terms of Plaintiffs' Investor Agreements and contrary to the repeated representations made by Defendants, including, without limitation, the payment of M&M's operating expenses, the payment of salaries or fees to employees, management personnel or outside consultants, accountants, and attorneys, and/or for other purposes not permitted by the Investment Agreements.

231.    Because of Defendants' actions as set forth herein, unless the Court issues a preliminary injunction, Plaintiffs will suffer irreparable harm as a result of Defendants' actions.

232.    The prospective harm incurred by Plaintiffs far outweighs any damages that may be caused to Defendants if the Court issues a preliminary injunction.

233.    The preliminary injunction, if issued, will not be adverse to the public interest.

234.    A substantial likelihood exists that Plaintiffs will prevail on the merits of this matter or, at a minimum, this case presents serious issues on the merits that should be the subject of further litigation.

235.    This Court should therefore issue a preliminary injunction consistent with the relief requested below.

## DEMAND FOR JURY TRIAL

The Plaintiffs, individually and in their representative capacities, respectfully demand a trial by jury of any issue triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment in its favor as follows:

A.    Under all causes of action, for judgment against Defendants, jointly and severally, in an amount to be determined at trial.

B.    Judgment in favor of Plaintiffs against the Defendants jointly and severally for compensatory damages in an amount to be shown at trial;

C.    Judgment in favor of Plaintiffs against each Defendant severally for punitive damages in an amount warranted by the proof at trial;

D.    Entry of an Order granting a preliminary injunction freezing the assets of Defendants and enjoining the use by Defendants of any portion of Plaintiffs' investment funds, or enjoining Defendants from taking any action which may impair the ability of the Investors to recover their money or assets and mandating, among other things, the appointment of a trustee to work in connection with Defendants to preserve assets and generate revenue for the Investors.

E.    Entry of a permanent injunction, enjoining Defendants from taking any action which may impair the ability of the Investors to recover their money or assets and appointing a

trustee to work in connection with Defendants to preserve assets and generate revenue for the

Investors.

       F.      Entry of an Order imposing a constructive trust over all of the accounts and

information of the Defendants relative to the Investors to preserve the assets.

       G.      Entry of an Order declaring the respective rights and relationships of the Plaintiffs

and the other investors, as an unincorporated association, a partnership, or other business entity,

and further setting forth the constituents and interests in such business entity;

       H.      Judgment in favor of Plaintiffs for costs, including discretionary costs and

reasonable attorneys fees; and

       I.      Such other relief as may be available under law or equity as the Court deems just.

DATED this 24th day of December, 2008.

                    STUCKI STEELE PIA & ANDERSON
                    Clay Stucki
                    Joseph G. Pia
                    Mark H. Richards

               By:   /s/ Clay W. Stucki_____
                    ATTORNEYS FOR PLAINTIFFS

Plaintiff's Address:
299 South Main Street
Suite 2200
Salt Lake City, Utah 84111