IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| APG ENTERPRISES, INC., et al.,<br><br>         Plaintiffs,<br><br>vs.<br><br>MONEY & MORE, INC., et al.,<br><br>         Defendants. | ORDER AND<br><br>MEMORANDUM DECISION<br><br><br><br>Case No. 2:08 CV 951 (TC) |

Plaintiffs[1] claim that they invested in a short-term payday lending business operated by Defendant Money & More, Inc. and its president, Defendant Gale Robinson, based in part on the efforts of Defendant Evolution Developments LLC and its managers and owners Defendants Larry Bosh, Shawn Benson and Michael Smith (collectively "Evolution Defendants"). Plaintiffs filed suit against all of the Defendants in December 2008, presenting twenty causes of action for various alleged violations of federal and state securities law and other claims. Plaintiffs, who have since settled their dispute with Defendants Money & More and Gale Robinson, now ask this court to freeze the assets of the Evolution Defendants and other associated individuals and

---

[1] Plaintiffs in this case are APG Enterprises; Atlas Capital Management LLC; BPW Financial Corporation; Dinero Unlimited LLC, which was formerly known as Group 88 LLC; Florin Capital Group LLC; Glory and Wealth LLC, which was formerly known as Juang L. Lin LLC, Johnson & Held Limited; KM5 Enterprises LLC; LH Business Solutions, Inc.; Magnolia Development Incorporated; Optimal Resource Management Corporation; Payday Funding Group LLC; Pratt & Associates, Inc.; Profitable Solutions LLC; PS1 Group LLC; PSV Group LLC; Renegade Bay LLC, Three Palms LLC; Utah Mountain LLC; Veredus Capital LLC; Westbrook Financial Investments LLC; and Xstar Financial LLC.

to order an accounting of all funds related to the Money & More investment scheme.  For the reasons set forth, Plaintiffs' motion for a preliminary injunction is denied without prejudice.

## FACTUAL BACKGROUND

Gale Robinson was the founder and president of Money & More LLC, a payday lending company.  Beginning in 2007, Larry Bosh, Shawn Benson and Michael Smith, acting individually and through Evolution Developments LLC (collectively "Evolution Defendants"), worked with Ms. Robinson to find investors for Money & More.

Plaintiffs describe a number of actions the Evolution Defendants allegedly took to promote investment in Money & More.  These included:  organizing  meetings with large groups of potential investors, sending mass email advertisements and encouraging those who were already involved with Money & More to encourage their family, friends, and associates to invest.

On multiple occasions, the Evolution Defendants allegedly told potential investors that existing investments were earning returns ranging from 10 to 14 percent each month and that future investments would earn returns of at least 10 percent.  According to Plaintiffs, the Evolution Defendants represented that an investment with Money & More was completely secure because of the company's payday lending business model, solvency, solid past performance and strong management.  The Evolution Defendants supposedly claimed that any investment risk was minimal since Money & More knew how to manage its affairs, to attract new investments, to maintain compliance with governing rules and regulations, to underwrite loan transactions, and to track, manage and collect loan payments.  Moreover, the Evolution Defendants allegedly represented that each investor's investment would be placed in a separate account and investment money would be used only for payday loans, not for business expenses.  Based on these representations, Plaintiffs and others gave at least $59 million in Money & More; Plaintiffs claim

that more than $40 million of that money came from them.

After Plaintiffs decided to invest in Money & More, the Evolution Defendants gave Plaintiffs what they believed was an investment agreement. Although the document was entitled "Factor Agreement," Plaintiffs maintain that they did not know the meaning of this phrase and that the Evolution Defendants allegedly did not explain it to them.

Plaintiffs claim that most of the representations made by the Evolution Defendants were false. According to Plaintiffs, the Evolution Defendants allegedly concealed that they had entered into an agreement with Money & More that gave the Evolution Defendants a one-time sales commission of 10 percent of the investment money they raised and an on-going management fee of 1.66 percent of the total investment funds raised. Plaintiffs contend that one of the Evolution Defendants, Larry Bosch, received at least $8.5 million between January and October 2008. Plaintiffs also claim that Money & More failed to create or use a separate account for each investor as promised and used between $10,000 and $15,000 of the investment money it received to cover its operating expenses and other business costs each.

Plaintiffs contend that the Evolution Defendants, along with Ms. Robinson and Money & More, created financial records for Money & More, including balance sheets, that contained false and misleading information. The Evolution Defendants allegedly distributed these records to existing and potential investors in order to solicit additional investment and to conceal their conduct. Plaintiffs maintain that the Evolution Defendants did not disclose the criminal records of associates.

**PROCEDURAL BACKGROUND**

In October 2008, Money & More stopped making payments to Plaintiffs and other investors. Plaintiffs filed this action shortly thereafter. In January 2009, they sought a temporary

restraining order and preliminary injunction. Plaintiffs asked the court to order Defendants to provide a complete and accurate accounting of all money received as part of Money & More's investment scheme and to appoint a receiver, who would, among other things, assume control of Money & More's operations and prevent dissipation of Plaintiffs' assets. Although the court denied the motion for a temporary restraining order, it set a briefing schedule for the preliminary injunction motion, ordered Money & More to provide Plaintiffs with an accounting of its use of funds between January and February 2009, and directed Defendants to share as soon as possible the independent accountant's report that was allegedly being prepared. Then, based on the representations of counsel that the parties were involved in settlement negotiations, the court terminated the motion for a preliminary injunction in March 2009.

In August 2009, after settlement negotiations soured, Plaintiffs refiled their motion for a preliminary injunction. At the hearing on the motion, Plaintiffs notified the court that because they had reached a settlement with Money & More and Ms. Robinson, they were only interested in pursuing a preliminary injunction against the Evolution Defendants. The court allowed Plaintiffs to amend their motion to reflect this change.

Then the court held a hearing on the amended motion for a preliminary injunction against the Evolution Defendants. As with the previous motions for preliminary injunction, Plaintiffs asked the court to order a complete and accurate accounting of the investment money that Money & More, Ms. Robinson and the Evolution Defendants had received and asked the court to freeze the assets of the Evolution Defendants and their spouses, children, officers, agents, servants, employees, attorneys and "those persons in active concert or participation" with the Evolution Defendants. (Pls.' Mem. Supp. Prelim. Inj., xv, Docket No. 97.)

The Evolution Defendants opposed the preliminary injunction on several grounds. They

argued that if the court granted the injunction, they would suffer a hardship including the inability to fund a defense.  Such a hardship would be particularly unjust, they argued, because they were in the same position as Plaintiffs—former investors who had lost money due to the fraudulent nature of the Money & More investment scheme.

Two witnesses testified at the hearing. The first witness was Timothy Provost, whose companies are among Plaintiffs in this case, followed by Larry Bosch, one of the Evolution Defendants.  According to the testimony, Mr. Provost invested about $12 million with Money & More and received $6 million in management fees and other returns; the Evolution Defendants invested $7 million with Money & More and received $3 to $4 million back.

At the close of the hearing, the court observed that Plaintiffs had failed to justify why the court should freeze assets of not only the Evolution Defendants, but their spouses, children, officers, agents, servants, employees, attorneys, and other individuals.  Plaintiffs' counsel agreed and explained that Plaintiffs were primarily interested in a forensic accounting of accounts related to Money & More, the Evolution Defendants and other associated individuals.  Plaintiffs suggested that they split the costs of such an accounting with the Evolution Defendants.  The Evolution Defendants objected, pointing out that they had already provided Plaintiffs with the relevant records from Wells Fargo Bank and, to their knowledge, these were sufficient.  Based on the statements counsel made at the end of the hearing, the court concludes that Plaintiffs have, for now, dropped their request to freeze assets and seek only a forensic accounting of related accounts.

## ANALYSIS

Generally, in order to obtain a preliminary injunction, the moving party must demonstrate "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable

harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.'" Attorney Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d 769, 776 (10th Cir. 2009) (quotation omitted).  A preliminary injunction is an "extraordinary remedy" such that the "right to relief must be clear and unequivocal." Beltronics USA, Inc. v. Midwest Inventory Distrib., 562 F.3d 1067, 1070 (10th Cir. 2009) (quotation omitted).

Courts have identified several types of injunctions that are disfavored and subject to even more intense scrutiny "to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." Tyson Foods, 565 F.3d at 789 (quotation omitted).  These disfavored injunctions include those what would disturb the status quo, those that are mandatory rather than prohibitory, and those that would afford the movant substantially all the relief it would recover if it prevailed at the end of a full trial on the merits.  O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004)(en banc), aff'd, 546 U.S. 418 (2006); see also Westar Energy, Inc.v. Lake, 552 F.3d 1215, 1224 (10th Cir. 2009) (identifying which types of preliminary injunctions are disfavored).

Here, Plaintiffs seek a type of preliminary injunction that falls within the categories of those that are disfavored.[2]  Plaintiffs seek an injunction that would disturb the status quo, "the last peaceable uncontested status existing between the parties before the dispute developed." Schrier v. Univ. of Colo., 427 F.3d 1253, 1260 (10th Cir. 2005) (quotation omitted).  Among

---

[2]Even if the court were to conclude that the injunction Plaintiffs seek is not a type that is disfavored, the court concludes that the Plaintiffs have still not made an adequate showing.  For the same reasons discussed below, Plaintiffs have not demonstrated under even the less onerous standard that they are likely to succeed on the merits of their claims or that they are likely to suffer irreparable harm.  See Tyson Foods, 565 F.3d at 776 (discussing the general requirements for seeking a preliminary injunction generally).

other things, Plaintiffs' requested injunction would freeze all of the accounts and other assets of the Evolution Defendants and a variety of other associated individuals including spouses, children, officers, agents, and even their attorneys. Considering its expansive breadth, such an injunction would unquestionably alter the parties' relationship and the relative status within that relationship. Contra Elliott v. Kiesewetter, 98 F.3d 47, 61 (3rd Cir. 1996) (concluding that a preliminary injunction that did no more than preserve the defendant family's assets from further dissipation by the defendant family properly attempted to maintain the status quo).

For a moving party to prevail and secure such a disfavored type of preliminary injunction, it must "'make[] a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms.'" Beltronics, 562 F.3d at 1071 (quotation omitted); see also Schrier, 427 F.3d at 1261 (noting that "the requirement that a movant requesting a disfavored injunction must make a showing that the traditional four factors weigh heavily and compellingly in his favor is no longer the law of the circuit"). The court considers whether Plaintiffs have made a sufficient showing on each of these four factors.

    **1.**     **Likelihood of Success on the Merits**

Plaintiffs present multiple causes of action against the Evolution Defendants for such claims as conversion, civil conspiracy, unjust enrichment, and violations of federal and state securities statutes and federal anti-racketeering statutes. But for purposes of securing a preliminary injunction, Plaintiffs focus their argument on the likelihood that they will prevail on the claims for the alleged violations of what they refer to as the anti-fraud provisions of federal and state securities law. See 15 U.S.C. §§ 77q(a), 78j(b); Utah Code Ann. § 61-1-1(2).

Although the requirements of each of these statutes varies slightly, they feature some common elements. 15 U.S.C. § 77q(a) makes it unlawful for a person in the sale of any security

to use a device, scheme or artifice to defraud, to obtain money or property using any untrue statement or any omission of material fact; or to engage in any transaction, practice or course of business that would defraud or deceive the purchaser.  15 U.S.C. § 78j forbids any person to use any "manipulative or deceptive device" in connection with the purchase or sale of a security.  Id. And Utah Code Section 61-1-1 prohibits the making of "any untrue statement of material fact" or the omission of a material fact that, when viewed in context, is misleading.  Id.

Plaintiffs claim that, in violation of these federal and state statutes, the Evolution Defendants made misstatements and omissions of material fact in connection with the investment in Money & More.  Plaintiffs argue that they relied on these misstatements and omissions when they decided to invest in Money & More and that they were injured as a result.

The Evolution Defendants do not dispute that they failed to disclose Mr. Smith's criminal conviction, but this is the only relevant evidence that is not in dispute.  The Evolution Defendants deny all of Plaintiffs' other allegations and dispute the characterization of these alleged representations or omission as material.  For example, the Evolution Defendants claim that they did not receive referral fees, as Plaintiffs contend, but simply received a return on their investments in Money & More.  And the Evolution Defendants argue that this return was no different than the return amount received by Plaintiffs and other investors.  Given the disfavored nature of the injunction sought, at this stage, the court concludes that Plaintiffs failed to make a sufficient showing that they are substantially likely to succeed on the merits of their claims against the Evolution Defendants.

    **2.**    **Irreparable Harm**

Because Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their claims, they are not entitled to a presumption that they would suffer an irreparable harm

absent a preliminary injunction.  See Schrier, 427 F.3d at 1266.  Consequently, Plaintiffs must provide the court with sufficient evidence of an irreparable injury or an injury that is so imminent that there is a clear and present need for the requested relief.  Speculative harm is not enough to constitute irreparable harm; the alleged injury must be "certain, great, actual and not theoretical." Id. at 1267.

Plaintiffs sole argument in support of an irreparable harm showing is as follows:  The Evolution Defendants allegedly received investment funds from Money & More, and Plaintiffs claim that these funds are either traceable to their investments or the court should consider them to be an asset that could be used to satisfy any judgment.  Plaintiffs argue that unless the court grants the injunction and freezes the assets of the Evolution Defendants and many other individuals, including even their attorneys, the money will be transferred or otherwise disposed and it will be "impossible as a practical matter for Plaintiffs to ever recover their money."  (Pls.' Mem. Supp. Prelim. Inj., 21, Docket No. 97.)

Beyond the most obvious problems associated with the overwhelming breadth of the injunction sought, Plaintiffs claim of irreparable injury at this stage is not compelling.  Plaintiffs have not demonstrated a significant risk that they will suffer a harm that could not be compensated by monetary damages.  See RoDa, 552 F.3d at 1210; Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2009); Port City Props. v. Union Pac. R.R. Co., 518 F.3d 1186, 1190 (10th Cir. 2008).  Irreparable harm does not exist when the injury can "be adequately atoned for in money."  Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1250 (10th Cir. 2001); see also Schrier, 427 F.3d at 1267 (indicating that in most cases simple economic loss "does not, in and of itself, constitute irreparable harm").

Furthermore, as a practical matter, Plaintiffs have failed to identify the accounts where

9

the alleged assets of the Evolution Defendants (or others) exist.  The parties do not dispute that the Evolution Defendants gave Plaintiffs records of a Wells Fargo Bank account.  But beyond this account, Plaintiffs have failed to identify any accounts that have allegedly tainted money. Consequently, the court concludes that, at this stage, Plaintiffs have not demonstrated irreparable injury.

      **3.**      **Balancing of Harms**

Even if Plaintiffs had demonstrated a sufficiently compelling threat of irreparable injury, they have failed to demonstrate that such injury would outweigh the harm that the Evolution Defendants would suffer if the court granted the motion for a preliminary injunction.  At most, the injury that Plaintiffs could claim to suffer would be neither exceptional nor the kind that could not be compensated with a monetary award.   For their part, the Evolution Defendants claim a preliminary injunction that would freeze all of their assets and the assets of other associated individuals including their attorneys would severely impair their ability to pay for their defense.  The Court does not find this argument compelling.  Consequently, the balance of harms favors neither party.

      **4.**      **Public Interest**

Finally, Plaintiffs must show that injunctive relief would not be contrary to the public interest.  Plaintiffs argue that because those associated with "Ponzi schemes are not entitled to live large and lavishly while they use the funds of those they conned," an injunction against the Evolution Defendants would serve the public interest.  (Pls.' Mem. Supp. Prelim. Inj., 25, Docket No. 97.)  But Plaintiffs have failed to make a sufficient showing with regard to the Evolution Defendants to support their claim.  Plaintiffs are not seeking an injunction against Ms. Robinson or Money & More.  Here, Plaintiffs only seek a preliminary injunction against the Evolution

Defendants. And the parties dispute whether the Evolution Defendants were simply investors like Plaintiffs who were victims of the Money & More investment scheme or whether they were involved in a manner of a more sinister nature. Absent this showing, the court cannot conclude at this stage that a preliminary injunction against the Evolution Defendants would be in the public interest.

**ORDER**

As revised by Plaintiffs, the motion for a preliminary injunction is DENIED without prejudice. (Docket No. 82.)

DATED this 14th day of October 2009.

BY THE COURT:

TENA CAMPBELL
Chief Judge